Michael T. TIERNEY, as Trustee for the Surviving Dependent Spouse, Heirs and Next–of–Kin of Harlan Ficken, Decedent, Appellant,

v.

ARROWHEAD CONCRETE WORKS, INC., Respondent,

J.L. Carlson and Associates, Inc., Respondent,

Alan Seline, Defendant.

No. A10–557.

Court of Appeals of Minnesota.

Nov. 23, 2010.

Mark L. Knutson, Dryer Storaasli Knutson & Pommerville, Ltd., Duluth, MN, for appellant.

Deborah C. Eckland, Scott R. Johnson, Goetz & Eckland, P.A., Minneapolis, MN, for respondent, J.L. Carlson and Associates.

Considered and decided by STONEBURNER, Presiding Judge; WRIGHT, Judge; and ROSS, Judge.

## OPINION

STONEBURNER, Judge.

Appellant is the trustee for the heirs and next-of-kin of a commercial tractor-trailer driver who was killed in a traffic accident allegedly caused by failure of respondent J.L. Carlson and Associates Inc., driver's employer, to comply with federally mandated safety requirements for equipment and maintenance of the tractor-trailer. Appellant sued respondent for wrongful death, asserting that 49 U.S.C. §§ 14704(a)(2) and 14707(a) provide private causes of action for wrongful death that are not barred by the exclusivity provision in Minnesota's Workers' Compensation Act, Minn.Stat. §§ 176.001–.862 (2008)

(the WCA). The district court held that (1) the relevant federal statutes only preempt the WCA if the provisions of the federal and state laws conflict; (2) the relevant federal statutes do not provide for the private causes of action asserted and therefore do not conflict with the WCA; and (3) appellant's claims are barred under the exclusivity provision of the WCA.

## FACTS

For purposes of this appeal, the facts are undisputed. Harlan Ficken was killed in a tragic one-vehicle accident when the brakes of the tractor-trailer he was operating failed as he attempted to negotiate a curve at the bottom of a hill, causing the vehicle to overturn. Ficken was employed by respondent J.L. Carlson and Associates Inc. (Carlson) at the time of the accident, and his death arose out of the course of his employment with Carlson. Carlson had a nondelegable responsibility to comply with the safety and registration requirements of the Motor Carrier Act of 1980 (also known as the Interstate Transportation Act), as amended by the ICC[1] Termination Act of 1995 (ICCTA) and other amendments (the Motor Carrier Act, collectively). 49 U.S.C. §§ 13101–14903 (2006).[2]

Ficken's survivors received workers' compensation benefits. Appellant Michael T. Tierney, as trustee for Ficken's surviving spouse, heirs, and next-of-kin, sued Carlson, alleging that Carlson's acts and omissions relating to the condition of the brakes and suspension system on the tractor-trailer violated provisions of the Motor Carrier Act, specifically 49 U.S.C. §§ 14704 and 14707, causing Ficken's wrongful death.

Carlson answered, asserting, in relevant part, as affirmative defenses, that the complaint failed to state a claim on which relief could be granted and that the claims are barred by the WCA. Carlson then moved to dismiss under Minn. R. Civ. P. 12.02(a) (lack of jurisdiction over the subject matter) and Minn. R. Civ. P. 12.02(e) (failure to state a claim upon which relief can be granted). The trustee opposed the motion, asserting that the federal statutes provide private causes of action for Ficken's wrongful death that are not barred by the exclusivity provision of the WCA.

The district court granted Carlson's motion to dismiss, concluding that (1) the private cause of action provided for in 49 U.S.C. § 14704(a)(2) is limited to claims for commercial damages; (2) the trustee failed to state a claim under 49 U.S.C. § 14707(a), which provides for private actions to enforce federal registration requirements, because the trustee failed to plead a registration violation causally related to the claim; and (3) the WCA's exclusivity provision bars Carlson's claims. In this appeal, trustee challenges the dismissal of claims asserted under the Motor Carrier Act.

## ISSUES

1. Did the district court err by holding that 49 U.S.C. § 14704(a)(2) does not provide a private cause of action for personal injury or death caused by a carrier's act or omission in violation of the Motor Carrier Act or its regulations?

2. Did the district court err by holding that the trustee's wrongful-death action failed to state a claim under 49 U.S.C. § 14707(a) because the complaint did not allege a failure to comply with the regis-

---

1. ICC is the acronym for Interstate Commerce Commission, which was abolished by the ICC Termination Act of 1995.

2. 49 U.S.C. § 14101(a) mandates that "a motor carrier shall provide safe and adequate service, equipment, and facilities."

tration requirements of the Motor Carrier Act or that a failure to comply with registration requirements caused the wrongful death?

3. Did the district court err by holding that the WCA provides the exclusive remedy for the trustee's claims?

## ANALYSIS

### I. Standard of Review

Carlson moved, under Minn. R. Civ. P. 12.02, for judgment on the pleadings. In opposition to the motion, the trustee submitted the affidavits of two expert witnesses, who opined that (1) the brakes on the tractor-trailer were defective and caused Ficken's death and (2) Carlson violated federal safety and record-keeping requirements of the Motor Carrier Act. The district court's order does not refer to any documents outside of the pleadings and is based on Minn. R. Civ. P. 12.02. Nonetheless, the parties argue that—due to the submission of affidavits—the motion should have been decided as a motion for summary judgment under Minn. R. Civ. P. 56. *See* Minn. R. Civ. P. 12.02 (stating, in relevant part, that if, on a rule 12.02 motion, matters outside of the pleadings are submitted to and not excluded by the district court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56").

Based on the district court's order, we conclude that the district court implicitly excluded the affidavits and decided the motion based solely on the pleadings under rule 12.02. "When reviewing a case dismissed pursuant to Minn. R. Civ.

P. 12.02(e) for failure to state a claim on which relief can be granted, the question before [an appellate] court is whether the complaint sets forth a legally sufficient claim for relief." *Hebert v. City of Fifty Lakes,* 744 N.W.2d 226, 229 (Minn.2008). "The standard of review is therefore de novo. The reviewing court must consider only the facts alleged in the complaint, accepting those facts as true, and must construe all reasonable inferences in favor of the nonmoving party." *Bodah v. Lakeville Motor Express, Inc.,* 663 N.W.2d 550, 553 (Minn.2003) (citation omitted).[3]

### II. Scope of private cause of action under 49 U.S.C. § 14704(a)(2)

The parties dispute whether 49 U.S.C. § 14704(a)(2) provides a private cause of action for personal injury or death. In construing federal statutes, the role of a reviewing court "is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 570, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982) (quotation omitted). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin,* 458 U.S. at 571, 102 S.Ct. at 3250).

The statute provides, in relevant part, "A carrier . . . is liable for damages sustained by a person as a result of an act or

---

**3.** We also review de novo a grant of summary judgment based on the application of a statute to undisputed facts. *See Weston v. McWilliams & Assocs., Inc.,* 716 N.W.2d 634, 638 (Minn.2006) (stating that application of a statute to undisputed facts results in a legal con-

clusion reviewed de novo). Therefore, it makes no practical difference whether the district court treated the motion as a summary-judgment motion or a motion for judgment on the pleadings. In either case, our standard of review is the same.

omission of that carrier or broker in violation of this part." 49 U.S.C. § 14704(a)(2). Whether, in the context of the Motor Carrier Act, this provision creates a private cause of action for personal injury (including death) is a matter of first impression in Minnesota. But several federal courts and one state supreme court have addressed this issue and, with one exception, have held that the private cause of action created by this provision is limited to an action for commercial damages.

The trustee relies heavily on what it characterizes as "a line of cases" holding that the provision creates a private cause of action for personal injury: *Hall v. Aloha*, No. CIV.98–1217(MJD/JGL), 2002 WL 1835469 (D.Minn. Aug. 6, 2002); *Vargo–Schaper v. Weyerhaeuser Co.*, 619 F.3d 845 (8th Cir.2010); *Amerigas Propane, LP v. Landstar Ranger, Inc.*, 184 Cal.App.4th 981, 109 Cal.Rptr.3d 686, —— P.3d —— (Ct.App.2010); and *Marrier v. New Penn Motor Express, Inc.*, 140 F.Supp.2d 326 (D.Vt.2001). But the *Hall* court specifically stated that it was not addressing the dispute about "whether section 14704 permits a private action for damages for violations of the tariff and registration provisions" because Hall failed to demonstrate causation, as required by section 14704(a)(2). 2002 WL 1835469, at *15. And *Vargo–Schaper* (1) does not involve the issue of whether the Motor Carrier Act provisions create a private cause of action and (2) only refers to the act as imposing certain duties on a carrier, relevant to the standard of care in a negligence action. 619 F.3d at 848–49. The trustee's "line of cases," therefore, actually consists only of *Amerigas* and *Marrier*.

*Amerigas* involves contribution, equitable-indemnity, and declaratory-relief actions brought by the owner of propane tanks (Amerigas) against a carrier after Amerigas settled the driver's action for personal injuries he sustained while off-loading the tanks from the carrier's truck. 109 Cal.Rptr.3d at 689–90, —— P.3d ——. On appeal from summary judgment, the California Court of Appeals concluded that because, in part, Amerigas "alleged a viable claim under [the Motor Carrier Act], . . . the trial court erred in granting [the carrier's] summary judgment motion on Amerigas's [claims]." *Id.* at 701, —— P.3d ——. The court stated that the intent of the Motor Carrier Act is "to protect drivers . . . and to hold carriers accountable for [regulations] violations resulting in harm to drivers, when no other recourse is available." *Id.* But in *Amerigas*, the carrier did not argue on appeal that section 14704(a)(2) does not create a private cause of action for personal injury or death. *Id.* at 692–701, —— P.3d ——. Therefore, the *Amerigas* court did not squarely address the issue trustee raises in this appeal and we conclude that the decision is unpersuasive here.

In *Marrier*, a dock worker was injured by exposure to a highly toxic chemical while loading a tractor-trailer. 140 F.Supp.2d at 326–27. He sued New Penn Motor Express Inc. (the carrier), under 49 U.S.C. § 14704(a)(2). *Id.* at 328. The carrier argued that, despite the apparent plain language of the statute, the purposes of the Motor Carrier Act are economic, such that personal injury actions are not within the scope of the Act. *Id.* at 328–29. The United States District Court for the District of Vermont held that the plain language of the statute creates a private cause of action for personal injury, noting that "[i]n the 'General Provisions' of Part B of the Act . . . Congress provided that 'it is the policy of the United States Government to oversee the modes of transportation and, in overseeing those modes, to promote *safe*, adequate, economical, and efficient transportation.'" *Id.* (quoting 49 U.S.C. § 13101(a)(1)(B) (2000)). Conclud-

ing that at least one of the purposes of the act was ensuring that motor carriers operate safely, the court found without merit the carrier's argument that recovery under the act is limited to economic damages and does not create a private cause of action for personal injuries. *Id.*

Carlson relies on four cases that specifically rejected the holding in *Marrier.* In *Stewart v. Mitchell,* the United States District Court for the District of Kansas held that "[s]ection 14704(a)(2) creates a private right of action for damages in commercial disputes involving violations of the Motor Carrier Act and its regulations, but not for personal injury actions." 241 F.Supp.2d 1216, 1221 (D.Kan.2002). Courts in Maryland, Oklahoma, and West Virginia have agreed with the reasoning in *Stewart* and rejected the reasoning of *Marrier. Jones v. D'Souza,* Civil Action No. 7:06CV00547, 2007 WL 2688332, at *7 (W.D.Va. Sept. 11, 2007); *Schramm v. Foster,* 341 F.Supp.2d 536, 547 (D.Md.2004); *Craft v. Graebel–Oklahoma Movers, Inc.,* 178 P.3d 170, 177 (Okla.2007).

*Stewart* involved an action for damages for personal injuries caused when the driver-employee of a tractor-trailer rear-ended the Stewarts' vehicle. 241 F.Supp.2d at 1218. Stewart, relying on *Marrier,* sued the driver and the commercial carrier that employed the driver, asserting a private cause of action under section 14704(a)(2). *Id.* at 1219. The *Stewart* court respectfully disagreed with the reasoning in *Marrier.* Finding the language in section 14704(a)(2) "ambiguous and inconsistent with other language in the statute," the federal district court looked "to the legislative history for guidance in interpreting the statute." *Id.*

The *Stewart* court relied, in part, on *Owner–Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.,* 192 F.3d 778, 785 (8th Cir.1999) (holding that section 14704(a)(2) "authorizes private action for damages and injunctive relief to remedy at least some violations of the Motor Carrier Act and its implementing regulations"). *Stewart,* 241 F.Supp.2d at 1221. In *Owner–Operator,* the Eighth Circuit Court of Appeals, contrasting the passive construction of section 14704(a)(2) with the explicit authorization of individual enforcement actions in section 14704(a)(1),[4] stated, "In construing this inconsistently drafted statute, it is appropriate to use its legislative history to confirm the most plausible construction of a subsection's plain language." 192 F.3d at 785.

The *Stewart* court found instructive the following comments in the conference report on ICCTA:

In addition to overseeing the background commercial rules of the motor carrier industry, the ICC currently resolves disputes that arise in such areas. There is no explicit statutory requirement to do so.... The ICC dispute resolution programs include household goods and auto driveway carriers, brokers, owner-operator leasing, loss and damage claims, duplicate payments and overcharges, and lumping. The bill transfers responsibility for all the areas in which the ICC resolves disputes to the Secretary [of Transportation].... The Committee does not believe that DOT [United States Department of Transportation] should allocate scarce resources to resolving these essentially private disputes, and specifically directs that DOT should not continue the dis-

---

4.  49 U.S.C. § 14704(a)(1) provides, "A person injured because a carrier ... does not obey an order of the Secretary [of Transportation] or the [Surface Transportation] Board, as ap-

plicable, under this part ... may bring a civil action to enforce that order under this subsection."

pute resolution functions in these areas. The bill provides that private parties may bring actions in court to enforce the provisions of the Motor Carrier Act. *This change will permit these private, commercial disputes to be resolved the way that all other commercial disputes are resolved*—by the parties.

241 F.Supp.2d at 1220 (quoting H.R.Rep. No. 104–311, at 87–88, *reprinted in* 1995 U.S.C.C.A.N. 793 at 799–800 (emphasis added)).

Based on the above language, the *Stewart* court, noting that the ICC apparently never had jurisdiction over personal-injury suits before its termination, concluded that, in drafting ICCTA, Congress was "primarily concerned with transferring the resolution of *commercial* disputes from the ICC to the courts." *Stewart,* 241 F.Supp.2d at 1221 (emphasis added) (citing H.R.Rep. No. 104–311, at 86, 87, *reprinted in* 1995–2 U.S.C.C.A.N. at 798–99, as indicating that the ICC was responsible for claims for the loss and damage of *goods* ). The *Stewart* court stated that it was taking the Eighth Circuit's analysis in *Owner–Operator* "a step further" by holding that "[s]ection 14704(a)(2) creates a private right of action for damages in commercial disputes involving violations of the Motor Carrier Act and its regulations, but not for personal injury actions." *Id.; see also Owner–Operator,* 192 F.3d at 785 (holding that section 14704(a) "authorizes private actions for damages … to remedy at least some violations of the Motor Carrier Act").

In *Schramm,* a case involving an accident between a passenger vehicle and a tractor-trailer, the United States District Court for the District of Maryland, like the *Owner–Operator* and *Stewart* courts, found the language of section 14704(a)(2) "enigmatic" because of the inconsistent wording of subsections (a)(1) and (a)(2). 341 F.Supp.2d at 547. Relying on legislative

history and the reasoning in *Stewart,* the *Schramm* court then joined "those courts which have found that section 14704(a)(2) does not create a private right of action for personal injuries." *Id.* Similarly, the United States District Court for the West District Virginia, in the unreported case of *Jones v. D'Souza,* held that there was no private action under section 14704(a)(2) for a plaintiff who was injured in an accident involving two tractor-trailers. 2007 WL 2688332.

Most recently, in *Craft,* a case strikingly similar to the case before us, the Oklahoma Supreme Court reached the same conclusions. 178 P.3d at 177. Craft was injured in the course and scope of her employment and sued her federal-carrier employer for injuries that she alleged were caused by the carrier's violation of applicable federal safety standards. *Id.* at 172. The carrier-employer successfully moved for summary judgment, asserting that it was protected by the exclusive-remedy provision found in Oklahoma's Workers' Compensation Act (OWCA). *Id.* at 172–73. On appeal from the intermediate appellate court's affirmance of summary judgment, the Oklahoma Supreme Court examined Craft's claim that the Motor Carrier Act provisions setting safety standards for commercial vehicles preempted OWCA, and separately examined Craft's claim that she had a cause of action under 49 U.S.C. § 14704(a)(2) that could not be barred by OWCA. *Id.* at 174–77. The Oklahoma Supreme Court examined the opinions discussed above, was "persuaded by the superior reasoning of the federal district courts of Maryland and Kansas," and concluded that Craft did not state a federal claim. *Id.* at 177.

Notwithstanding *Amerigas,* which we have found unpersuasive due to its lack of analysis, we, like the Oklahoma Supreme Court, are persuaded by the reasoning in

the *Stewart* and *Schramm* cases, both of which are based on the Eighth Circuit's holding in *Owner–Operator* that, because of the inconsistent wording in 49 U.S.C. § 14704(a), it is appropriate to look beyond the seemingly plain wording of subsection (a)(2) to the legislative history, to determine the scope of that subsection. We conclude, therefore, that the district court did not err in holding that 49 U.S.C. § 14704(a)(2) does not create a private cause of action for personal injury or death.

## III. Failure to state claim under 49 U.S.C. § 14707(a)

■ The trustee argues that the district court erred by concluding the complaint failed to state a claim under 49 U.S.C. § 14707(a). The trustee's argument is not as clearly developed as the argument regarding section 14704(a)(2) and is, therefore, somewhat difficult to review. Section 14707(a) provides, in relevant part, "If a person provides transportation by motor vehicle or service in clear violation of section 13901–13904 or 13906, a person injured by the transportation or service may bring a civil action to enforce any such section." 49 U.S.C. § 13901 provides, in relevant part, that "[a] person may provide transportation ... or be a broker for transportation ... only if the person is registered under this chapter to provide the transportation or service." Sections 13902 through 13904 and section 13906 generally specify the conditions under which the Secretary of Transportation must or may register a person to provide transportation or be a broker for transportation. Section 14707(a) does not provide for a civil action for violations of section 13905, which expedites procedures to revoke registrations of motor carriers that are not operating safely. 49 U.S.C. § 13905(e). Therefore, section 14707(a), when read—as it must be—with sections 13901 through 13904, and with 13906, limits its private civil actions brought under this section to those enforcing the requirements that certain persons be registered to provide transportation or to be brokers for transportation. In this case, as the district court held, those registration requirements were not alleged to be violated or causally related to Ficken's death.

Several federal cases involving claims brought under section 49 U.S.C. § 14707(a) support the district court's determination. *See Delta Research Corp. v. EMS, Inc.*, No. 04–60046, 2006 WL 1042048, at *1 (E.D.Mich. Apr. 19, 2006) (stating, in an unreported decision, that section 14707 was not implicated where there was "no causal relationship between the damages alleged by [p]laintiff and any failure by [defendant] to register as a motor carrier"); *see also D.V.C. Trucking, Inc. v. RMX Global Logistics*, No. Civ. A. 05–CV–00705, 2005 WL 2044848, at *4 (D.Colo. Aug. 24, 2005) (concluding, in an unreported decision, that section 14707 had no application to the case where the complaint itself alleged that defendant was registered); *see also Ford v. Allied Van Lines Inc.*, No. CIV. 3:96CV2598(AHN), 1997 WL 317315, at *3 (D.Conn. June 3, 1997) (concluding, in an unreported decision, that section 14707 was not applicable to the case where plaintiff did not allege a failure to register); *cf. Greyhound Lines, Inc. v. Monroe Bus Corp.*, 309 F.Supp.2d 104, 108–10 (D.D.C.2004) (holding that defendants were not entitled to summary judgment on a claim brought against them under section 14707 where the claim alleged a failure of defendant to register as required by section 13901); *Hall*, 2002 WL 1835469, at *10–11 (concluding that, notwithstanding the district court's determinations in favor of defendant on plaintiff's claims to damages and attorney fees under section 14704, "[p]laintiff may still be enti-

tled to attorney's fees under § 14707 for violation of the registration requirement," where defendant failed to be registered as required by section 13901); *Phoenix Assur. Co. v. K–Mart Corp.*, 977 F.Supp. 319, 326–27 (D.N.J.1997) (stating that plaintiff's claims "concern 49 U.S.C. § 14707" because it was unclear whether defendants had been operating without proper registration).

The trustee argues that the claim under section 14707(a) is valid because he alleged that Carlson failed to comply with safety regulations and therefore violated 49 U.S.C. § 13902(a)(1), (5). Section 13902(a)(1) provides, in relevant part, that "the Secretary shall register a person to provide transportation ... as a motor carrier if the Secretary finds that the person is willing and able to comply with ... (B)(i) any safety regulations imposed by the Secretary." And section 13902(a)(5) states, in relevant part, that "[t]he Secretary may hear a complaint from any person concerning a registration under this subsection ... on the ground that the registrant fails or will fail to comply with ... the applicable safety regulations of the Secretary."

Section 13902(a)(1) unambiguously requires the secretary to register a person if the secretary finds that the person is "willing and able to comply" with applicable regulations, including safety regulations. But the trustee has never alleged that Carlson failed to demonstrate that it was willing and able to comply with the regulations at the time it was registered. Section 13902(a)(5) allows the secretary to hear complaints that allege a failure of a registrant to comply with applicable regulations, but in this case, the trustee does not seek to compel the secretary to hear such a complaint. We conclude that the district court did not err in holding that

the trustee failed to state a claim under section 14707(a).

## IV. Exclusivity of WCA

Much of the briefing in this case involves arguments about preemption. The district court held that the federal statutes cited by the trustee do not preempt the WCA. On appeal, the trustee does "not disagree ... that these federal statutes do not preempt the [WCA]." The trustee argues that the real issue is whether the WCA preempts the federal statutes, asserting that the WCA does not "abrogate[ ] or limit[ ] any federal statutory right to a private cause of action." Because we have rejected the trustee's underlying argument that trustee has stated causes of action under 49 U.S.C. §§ 14704(a)(2) and 14707(a), and the parties agree that the exclusivity provision of the WCA bars all other (state and common-law) claims remaining in this case, there is no preemption issue. The district court did not err in holding that the WCA provides the exclusive remedy for the trustee's claims.

## DECISION

Because 49 U.S.C. §§ 14704(a)(2) and 14707(a) do not create private causes of action for the wrongful-death claims asserted by the trustee in this action, the district court did not err by concluding that the WCA provides the exclusive remedy or by dismissing the trustee's claims under the federal statutes for failure to state a claim on which relief could be granted.

**Affirmed.**